**PROCESS EQUIPMENT CO., Inc.,**
**Plaintiff,**

v.

**DENVER CHICAGO TRUCKING COMPANY, Defendant.**

**Civ. A. No. 66–594–C.**

United States District Court
D. Massachusetts.

Nov. 27, 1967.

Edwin R. Trafton, Boston, Mass., for plaintiff.

Paul V. Salter, Wasserman & Salter, Boston, Mass., for defendant.

## OPINION

CAFFREY, District Judge.

This is a civil action alleging breach of contract brought by plaintiff Process Equipment Co., Inc., a Massachusetts corporation with a usual place of business in Brockton, Massachusetts, against Denver Chicago Trucking Company, a corporation organized under the laws of Colorado. Plaintiff is a manufacturer and defendant is a common carrier by motor truck. Jurisdiction of this court is based on the provisions of 49 U.S.C.A. § 20.

After trial, I find and rule as follows:

Plaintiff, prior to June of 1964, made a contract with the Dow Chemical Company, under the terms of which plaintiff was to manufacture and deliver to Dow Chemical at Rocky Flats, Colorado, six vacuum heating units, with a total value of approximately $70,000. After completing the manufacture of these units, plaintiff contacted the defendant and retained its services as carrier by motor truck of this equipment from plaintiff's plant in Brockton to Dow Chemical at Rocky Flats, Colorado. Prior to delivery of these units by plaintiff to defendant, engineers from Dow Chemical went to plaintiff's plant in Brockton and made certain tests of the equipment in the presence of engineering representatives of plaintiff. The Dow engineers accepted the six units as having been manufactured in accordance with Dow's contract with plaintiff, and the units were then placed on wooden skids and loaded on to a trailer truck at plaintiff's factory in good normal operating condition. Each skid was nailed and spiked to the floor of the trailer and wooden blocks of two-by-fours were nailed to the floor around the wooden skids as an additional preventative against the skids moving while the trailer was in transit. Defendant issued to plaintiff a straight bill of lading, short form, No. S-10179, dated June 19, 1964. No exceptions of any kind, as to the condition of the equipment or otherwise, were noted on the bill of lading. The truck proceeded to defendant's Boston terminal where 3,218 pounds of additional freight were added to the trailer. This additional ton and one-half of freight consisted of printed matter, valves, meters, plastic sheeting, electrical appliance, electrical grinder, and empty boxes for nuts.

The units arrived at Rocky Flats, Colorado, on June 26, 1964. A Denver-Chicago delivery receipt introduced in evidence had noted on the face of it the following exception: "Received in bad condition. Thermocouple gages shook loose, controls for Heraeus blower cable sheared off, main pumping line broken away from chamber." A written report of the condition of the units upon arrival was sent to plaintiff, as a result of which plaintiff sent two of its engineers to Dow Chemical at Rocky Flats to inspect the damage. These engineers were able to put three of the six units into a condition acceptable to Dow's engineers by "cannibalizing" parts from the other three, and the other three were returned to plaintiff's plant in Brockton for repairs.

In Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, pp. 137–138, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964), the Supreme Court stated:

"It is settled * * * that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods. * * * Accordingly, under federal law, in an action to recover from a carrier for damage to a ship-

ment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability."

On the basis of the testimony adduced at the trial I am satisfied that plaintiff put six units in operable condition safely aboard defendant's trailer truck at Brockton, that plaintiff loaded the units without causing any damage to them in the loading process, and that the units were properly skidded and nailed down to prevent any improper movement of the units while in transit. I further find that they were not damaged by representatives of Dow Chemical during the unloading process.

I rule that on the evidence plaintiff has proven a prima facie case within the above-quoted language of the Supreme Court, and also that defendant has failed to sustain its burden of proving that it was free from negligence and that the damage to the cargo was due to one of the excepted causes. Thus I conclude that the damage sustained by the units while in transit was a proximate result of negligence on the part of representatives of defendant.

With regard to the extent of the damages suffered by plaintiff, there is evidence that the contract price paid by Dow Chemical to plaintiff for each of these units was $11,385, or $68,310 for the six. There was also evidence that because of the damages none of the six units was in marketable or operable condition upon delivery to Rocky Flats, and there was evidence which if believed would indicate that the direct cost, plus certain indirect costs which may or may not properly be chargeable to defendant, of restoring all six units to a marketable and operable condition was $14,654.58.

The $14,654.58 figure includes as its major element an item of $10,095.04 said to be the direct cost of repairs and replacement parts to the units. The remainder of said sum is made up of less direct expenses, such as travel costs of engineers for trips from Brockton to Rocky Flats for inspection and repair purposes, shipping costs, etc. On all the evidence relating to damages I find that $11,500 is fair and reasonable compensation to plaintiff. From this must be deducted the sum of $1,200 which counsel for plaintiff stipulated was due and owing to defendant, and for which defendant has counterclaimed.

Judgment accordingly.